**3 BRIDGES, INC., Terry Sutton, President, Petitioner,**

v.

**UNITED STATES of America Secretary of the Treasury, Hon. Paul H. O'Neill**

**and**

**Department of the Treasury Alcohol, Tobacco & Firearms Dir. of Industry Operations Marcia F. Lambert, Respondents.**

**No. Civ.A. 01–86–JMH.**

United States District Court, E.D. Kentucky, At Frankfort.

Aug. 12, 2002.

Steven G. Bolton, Frankfort, KY, for Petitioner.

Thomas Lee Gentry, U.S. Attorney's Office, Lexington, KY, for Respondents.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on Respondent's motion for summary judgment [Record No. 3]. Petitioner has responded [Record No. 9], to which Respondent has replied [Record No. 11]. Respondent's motion is now ripe for review.

## FACTUAL SUMMARY

From 1991 to 2001, Petitioner 3 Bridges, Inc., ("3 Bridges") and its president Terry Sutton ("Sutton") possessed a federal firearms license, permitting 3 Bridges to sell firearms. On March 14, 2001, Sutton was notified by the Bureau of Alcohol, Tobacco, and Firearms (ATF) that his license renewal application was being denied due to willful violations of the Gun Control Act (GCA). These violations were alleged to have occurred in 1994, 1995, and 2000. Sutton made a timely request for a hearing to contest this denial and it was held on June 13, 2001 in Frankfort. After reviewing the evidence presented at the hearing and receiving a recommendation to renew the license from the hearing officer, the Director of Industry Operations (DIO) concluded that 3 Bridges had made willful violations of the GCA and made a final decision to deny Petitioner's renewal application. On October 31, 2001, 3 Bridges filed for a *de novo* hearing in this Court. On January 2, 2002, Respondent United States Secretary of the Treasury moved for summary judgment.

## STANDARD OF REVIEW

■ This Court, in accordance with 18 U.S.C. § 923(f)(3), review's such license renewal hearings *de novo*. As such, "the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing," 18 U.S.C. § 923(f)(3), and "the administrative decision is not clothed in this Court with any presumption of correctness." *Weidner v. Kennedy*, 309 F.Supp. 1018, 1019 (C.D.Cal.1970). However, summary judgment may be appropriate upon *de novo* review on the basis of the administrative record when no substantial reason to receive additional evidence is present and when "material facts developed at the administrative hearing, which the court also concludes justify non-renewal, are not substantially drawn into question by the party petitioning for review." *Cucchiara v. Secretary of the Treasury*, 652 F.2d 28, 30 (9th Cir.1981).

## DISCUSSION

■ This Court finds that there is ample evidence within the administrative record that Petitioner's license should have been revoked, and Petitioner can offer no evidence to demonstrate otherwise. According to the GCA, "[t]he Secretary may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter." 18 U.S.C. § 923(e). A violation is "willful," within the context of federal firearms licensing cases, if a "dealer understands the requirements of the law, but knowingly fails to follow them or was indifferent to them." *Perri v. Department of Treasury, Bureau of Alcohol, Tobacco and Firearms*, 637 F.2d 1332, 1336 (9th Cir. 1981). *See also Cucchiara*, 652 F.2d at 30 (9th Cir.1981); *Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir.1979); *T & T Salvage Auction v. Secretary of the Dept. of the Treasury*, 859 F.Supp. 977, 979 (E.D.N.C.1994); *Powers v. Bureau of Alcohol, Tobacco & Firearms*, 505 F.Supp. 695, 698 (N.D.Fla.1980).

Petitioner contends that the proper standard of "willfulness" is found in *Rich v. United States*, 383 F.Supp. 797 (S.D.Ohio 1974), where the court held that in order to be a wilful violation, the licensee's behavior must be purposeful and intentional rather than merely negligent. *Id.* at 800. However, this holding finds no other support in the case law, and has been expressly rejected in *Perri* and *Cucchiara,* and was not followed by the United States Court of Appeals for the Sixth Circuit in the unpublished opinion of *Al's Jewelry and Loan, Inc. v. United States, Dep't. Of Treasury,* 103 F.3d 128, 1996 WL 683528 (6th Cir.1996). Thus, this Court adopts the *Perri* standard of willfulness and rejects the *Rich* standard.

## A. Plaintiff willfully violated the Gun Control Act.

There is sufficient evidence in the administrative record to support the ALJ's finding that violations of the GCA occurred and that they were willful. In a 1994 inspection, 3 Bridges was cited with the following violations of the GCA:

1. Handguns were sold to an underage person;

2. Firearms transaction records (ATF Forms 4473) were not properly completed;

3. Two guns on hand were not recorded in the acquisition and disposition records book ("A & D book"); and

4. The person who signed the 4473 Forms was not always the person who completed the sale.

Petitioner admits that these violations occurred. Such admissions are found in the administrative record.[1]

In 1995, 3 Bridges was further cited for not properly maintaining the A & D book. Petitioner does draw this violation into question, but evidence in the record indicates otherwise.[2]

In 2000, Petitioner was cited for further violations:

1. Failure to properly maintain the A & D book;

2. Failure to properly maintain the ATF 4473 Forms;

3. Failure to complete National Instant Check Systems ("NICS") checks prior to the transfer of firearms; and

4. Transfer of a firearm prior to the expiration of three business days following an NICS "Delay" response.

Petitioner admits to failing to properly maintain the A & D book.[3] Petitioner admits that some of the ATF 4473 Forms were not correctly completed, but claims that these were simply "minor technical errors."[4] Petitioner does not dispute that NICS checks were not completed, but rather claims ignorance of the law, in that he never received the "Open Letter to All Kentucky Federal Firearms Licensees" that informed licensees of the change in the law. Furthermore, Petitioner claims that he "may" have transferred a firearm without waiting the proper three days after the "Delay" response.[5]

██ In light of the forgoing, this Court finds that there is sufficient evidence in

---

1. *See* Transcript of administrative hearing, e.g., pgs. 33, 12–25; pg. 34, lines 1–6; pg. 37, lines 22–25; pg. 51, lines 10–25; pg. 53, lines 1–2; *See also* Petitioner's affidavit, paragraph 17; *Petitioner's Memo* at pg. 9.

2. *See* Government Exhibit No. 8, Worksheet # 1 and # 2.

3. *See* Transcript of hearing, pg. 44, lines 2–5.

4. *See* Transcript of hearing, pg. 42, lines 23–24.

5. *See* Transcript of hearing, pg. 67, line 16.

the administrative record, especially from Petitioner's own admissions, that violations of the GCA did occur. Even if Petitioner can produce evidence in support of his specific denials, there are a sufficient number of violations that he has admitted.

These violations were also willful in that Petitioner understood the requirements of the law but knowingly failed to follow them or was indifferent towards them. Petitioner was aware of the law concerning maintenance of the A & D book and completion of ATF Form 4473, as he has been a dealer for 10 years and has manuals on how to comply with the GCA on the premises. Furthermore, after the 1994 inspection, Petitioner was warned of his violations and instructed on how to properly comply with the law in these areas. Petitioner was also aware of what to do when a "Delay" response was received on an NICS check because of his experience and an FBI guide book on the premises that explained exactly how to comply with such a response.

Petitioner's only claim to show that a violation was not willful is that he never received the "Open Letter" on running NICS checks. Consequently, he argues that if he never received the letter, then he could not be charged with "understanding the requirements of the law," which is required for a violation to be willful. However, this disputed fact is not material because the record is replete with other admitted violations that do qualify as willful. Furthermore, this Court is reluctant to acknowledge that "ignorance of the law" can be a defense to this violation.

Even though Petitioner's license was renewed twice after the 1994 and 1995 violations, the 2000 violations are sufficient to classify Petitioner as a repeat offender. Petitioner was cited in both 1994 and 2000

for failing to maintain the A & D book and for failing to properly complete the ATF 4473 Forms. Moreover, this Court finds all of the proven violations are sufficient to deny renewal of Petitioner's license. Courts have held that "[a]ny single violation of the federal statutes or regulations controlling the firearms industry can be a basis for denying an application for a new license or revoking an existing license." *DiMartino v. Buckles*, 129 F.Supp.2d 824, 832 (D.Md.2001). Here, 3 Bridges has committed several offenses after being warned in the past and this is certainly sufficient to revoke Petitioner's license. Petitioner claims that some of the violations cited were simply "minor technical errors." However, the United States Supreme Court has noted that one of the purposes of the GCA is "to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States*, 423 U.S. 212, 218, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976). By not properly completing ATF background check forms or conducting proper NICS checks, this goal cannot be accomplished.

**B. Petitioner's complaints about the administrative hearing are not relevant in this context.**

Many of Petitioner's complaints involve the fact that he was not given a fair chance to defend himself at the license renewal hearing, or that hearsay was admitted into evidence at the hearing. However, the hearing was conducted in accordance with all necessary administrative procedures. Petitioner was without counsel at the hearing by his own decision, and had been told at least three times that he was entitled to have counsel present.[6]

---

**6.** He was informed of this by a written letter (*see* Government Exhibit No. 4) and admits to being advised at least twice in telephone conversations that he could have counsel present (*see* Petitioner's affidavit, paragraphs 7 and 10).

Furthermore, the normal rules of evidence do not apply to such administrative hearings. In fact, the only requirement to admit evidence in an administrative hearing is that it be relevant. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Furthermore, any claim regarding the sufficiency of the administrative hearing is not relevant here, inasmuch as this Court's decision is based primarily on Petitioner's own admissions to violations.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment [Record No. 45] be, and the same hereby is, **GRANTED.**

## *JUDGEMENT*

In accordance with the Memorandum Opinion and Order of even date and entered contemporaneously herewith,

**IT IS HEREBY ORDERED:**

(1) That this action be, and the same hereby is, **DISMISSED AND STRICKEN FROM THE ACTIVE DOCKET.**

(2) That all pending motions be, and the same hereby are, **DENIED AS MOOT.**

(3) That all scheduled proceedings be, and the same hereby are, **CONTINUED GENERALLY.**

(4) That this Order is **FINAL AND APPEALABLE** and **THERE IS NO JUST CAUSE FOR DELAY.**