**REX WINE CORPORATION,**
Appellant,

v.

**W. E. DUNIGAN, Assistant Regional Commissioner, et al., Appellees.**

No. 304, Docket 23431.

United States Court of Appeals
Second Circuit.

Argued May 10, 1955.

Decided June 22, 1955.

---

7. 11 U.S.C.A. § 96, sub. b.

Edward Halle, New York. City, for appellant.

Richard O. Michael, Sp. Asst. to the Atty. Gen., Stanley N. Barnes, Asst. Atty. Gen., Daniel M. Friedman, Sp. Asst. to the Atty. Gen., Charles R. W. Smith, Atty., Alcohol and Tobacco Tax Legal Division, Internal Revenue Service, Washington, D. C., for appellees.

Before HAND, SWAN and FRANK, Circuit Judges.

HAND, Circuit Judge.

This appeal is from an order of the Assistant Regional Commissioner under the Federal Alcohol Administration Act, 27 U.S.C.A. § 201 et seq., suspending for twenty days two "Basic Permits," issued to the appellant, as a "Wine Producer and Blender." The proceeding began with an order of a "District Supervisor," directing the appellant to show cause why its permits should not be suspended. On return of the order the cause came on before a "Hearing Examiner," who found against the appellant, and directed a suspension of its permits for thirty days. Upon a petition to review the "Examiner's" order, the "Director of Alcohol and Tobacco Division of the Internal Revenue Service," although he affirmed most of the findings, reduced the period of suspension from thirty to twenty days. This appeal is from an order of the Assistant Regional Commissioner, enforcing the "Director's" order.

The facts are undisputed; and, so far as relevant, were as follows. The appellant is engaged in bottling and selling to wholesalers and retailers wine purchased in bulk in California. Such a dealer must pay taxes on the wine he sells by buying stamps and pasting them on the wine cartons containing the wine, before these are taken from the winery or other place of storage for delivery to the buyer; and he must cancel the stamps, and keep records of his sales. The "Hearing Examiner" found that the petitioner had committed 74 willful violations of the regulations charged, all of which the "Director" affirmed, although he acquitted the appellant of "any flavor of deliberate intent to defraud." Because the violations were "willful" he affirmed the suspension, though he reduced its period from thirty to twenty days, as we have said.

█ The appellant raises five objections to the order as so modified: I, That the charge did not allege that violations were "willful"; II, That the appellant should have been given an opportunity to comply with the regulations; III, That it was error to admit in evidence against it an earlier disciplinary proceeding in 1944 for similar violations which had been settled by a compromise; IV, That there was no substantial evidence of "willfulness"; and

V, That the penalty was excessive. It is difficult to take seriously any of these objections except the fourth, consideration of which we reserve for the moment. The "grounds" of the order to show cause that began the proceeding recited in some detail the former proceeding in 1944, and asked as the remedy a suspension of the permits. Since § 4 (e) of the Federal Alcohol Administration Act requires a finding that the permittee has "willfully violated" the conditions of the permit, it is apparent that the proceeding presupposed "willful" violations. The appellant then, and throughout the proceeding, must have become aware that it was being tried for such violations; and indeed it does not show in what way its defence was prejudiced by the omission in the charge. The earlier proceeding was relevant, even though it ended in compromise and settlement; it furnished evidence of that persistency in neglect of the regulations on which, as we shall show, an inference of "willfulness" might properly rest. As to the severity of the penalty we can only say that the appellant escaped easily.

■ Therefore, as we have said, all that matters is whether the "Director," although he found that the appellant had no intent to defraud the Treasury, was nevertheless free to hold that the continuance of its negligent practices, after a warning ten years earlier, was adequate evidence that the practices had been "willful"—§ 4(d) & (e), Title 27 U.S. C.A. It must be owned that about that adjective there always gathers an unhappy cloud of uncertainty that has caused an abundance of discussion; nevertheless, we cannot doubt that it covered the situation at bar. In United States v. Illinois Central Ry. Co., 303 U. S. 239, 58 S.Ct. 533, 82 L.Ed. 773, the Court, in considering the failure of a railroad properly to feed cattle in transit, held that indifference to the performance of an affirmative legal duty might be "willful"; it adopted the following definition of Van Devanter, J., in St. Louis & San Francisco R. Co. v. United States, 8 Cir., 169 F. 69, 71: "it does not mean with intent to injure the cattle or to inflict loss upon their owner * * *, we are persuaded that it means purposely or obstinately and is designed to describe the attitude of a carrier, who * * * either intentionally disregards the statute or is plainly indifferent to its requirements." It was permissible for the "Director" to attribute plain indifference to the appellant because of its persistent disregard of those formalities upon compliance with which the continued validity of its permits depended. Perhaps that disregard would not have been enough, had it not followed the earlier proceeding for the same kind of disregard; but that certainly must have brought sharply to its attention, not only that it was a negligent offender, but that its offences were not venial. The fact that that proceeding ended in a settlement is irrelevant; its importance was that it must have impressed upon the licensee, so brought to book, the need of a more attentive scrutiny of the details of its business. We do not mean that these facts inevitably demonstrated a "willful" disposition; but we do mean that they were adequate evidence of it, and that such a disposition, when accompanied by a failure to perform the conditions, is a "willful" violation. No doubt there is a difference between such a disposition and a deliberate determination not to perform; but a deliberate determination not to take the care that the delinquent knows to be necessary is an attitude of the will as affirmative as a deliberate refusal to perform. Mere continued neglect, unaccompanied by such a determination, is another thing. Whether we should ourselves have come to the same conclusion is not important.

Order affirmed.